Cletus DREIFUERST, and another, Plaintiffs-Respondents,
v. Claude DREIFUERST, Defendant-Appellant.

Court of Appeals

*No. 78–299. Submitted on briefs March 14, 1979.—
Decided May 25, 1979.*
(Also reported in 280 N.W.2d 335.)

For the appellant, a brief was submitted by *Gary R. Sharpe* of *Worthing, Mickiewicz & Sager, S.C.* of Fond du Lac.

For the respondent, there was a brief by *Kenneth J. Sippel* of *Laird, Sippel & Herrick* of Fond du Lac.

Before Brown, P.J., Bode, J., and Robert W. Hansen, Reserve Judge.

BROWN, P.J. The plaintiffs and the defendant, all brothers, formed a partnership. The partnership operated two feed mills, one located at St. Cloud, Wisconsin and one located at Elkhart Lake, Wisconsin. There were no written Articles of Partnership governing this partnership.

On October 4, 1975, the plaintiffs served the defendant with a notice of dissolution and wind-up of the partnership. The action for dissolution and wind-up was commenced on January 27, 1976. The dissolution complaint alleged that the plaintiffs elected to dissolve the partnership. There was no allegation of fault, expulsion or

contravention of an alleged agreement as grounds for dissolution. The parties were unable, however, to agree to a winding-up of the partnership.

Hearings on the dissolution were held on October 18, 1976 and March 4, 1977. Testimony was presented regarding the value of the partnership assets and each partner's equity. At the March 4, 1977 hearing, the defendant requested that the partnership be sold pursuant to sec. 178.33(1), Stats., and that the court allow a sale, at which time the partners would bid on the entire property. By such sale, the plaintiffs could continue to run the business under a new partnership, and the defendant's partnership equity could be satisfied in cash.

On February 20, 1978, the trial court, by written decision, denied the defendant's request for a sale and instead divided the partnership assets in-kind according to the valuation presented by the plaintiffs. The plaintiffs were given the physical assets from the Elkhart Lake mill, and the defendant was given the physical assets from the St. Cloud mill. The defendant appeals this order and judgment dividing the assets in-kind.

Under sec. 178.25(1), Stats.,[1] a partnership is dissolved when any partner ceases to be associated in the carrying on of the business. The partnership is not terminated, but continues, until the winding-up of partnership is complete. Sec. 178.25(2), Stats.[2] The action started by the plaintiffs, in this case, was an action for dissolution and wind-up. The plaintiffs were not continuing the partnership and, therefore, secs. 178.36 and

---

[1] 178.25 **Dissolution of partnership defined.** (1) The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business.

[2] 178.25(2) On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed.

178.37, Stats.,[3] do not apply. The sole question in this case is whether, in the absence of a written agreement to the contrary, a partner, upon dissolution and wind-up of the partnership, can force a sale of the partnership assets.

At the outset, we note, and the parties agree, that the appellant was not in contravention of the partnership agreement since there was no partnership agreement. The partnership was a partnership at will. They also agree there was no written agreement governing distribution of partnership assets upon dissolution and wind-up. The dispute, in this case, is over the authority of the trial court to order in-kind distribution in the absence of any agreement of the partners.

Section 178.33 (1), Stats., provides:

When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his copartners and all persons claiming through them in respect to their interests in the partnership, *unless otherwise agreed,* may have the partnership property applied to discharge its liabilities, and the surplus applied to pay *in cash* the net amount owing to the respective partners. [Emphasis supplied.]

The appellant contends this statute grants him the right to force a sale of the partnership assets in order to obtain his fair share of the partnership assets in cash upon dissolution. He claims that in the absence of an agreement of the partners to in-kind distribution, the trial court had no authority to distribute the assets in-kind. He is entitled to an in-cash settlement after judicial sale.

The respondents contend the statute does not entitle the appellant to force a sale and grants the trial court the power to distribute the assets in-kind if in-kind

---

[3] Sections 178.36 and 178.37 deal with cases where the partnership is not wound up, but continues after one partner leaves.

distribution is equitably possible and doesn't jeopardize the rights of creditors.

We do not believe that the statute can be read in any way to permit in-kind distribution unless the partners agree to in-kind distribution or unless there is a partnership agreement calling for in-kind distribution at the time of dissolution and wind-up.

A partnership at will is a partnership which has no definite term or particular undertaking and can rightfully be dissolved by the express will of any partner. Sec. 178.26(1)(b), Stats.; J. CRANE AND A. BROMBERG, LAW OF PARTNERSHIP §74(b) (1968) [hereinafter cited as CRANE AND BROMBERG]. In the present case, the respondents wanted to dissolve the partnership. This being a partnership at will, they could rightfully dissolve this partnership with or without the consent of the appellant. In addition, the respondents have never claimed the appellant was in violation of any partnership agreement. Therefore, neither the appellant nor the respondents have wrongfully dissolved the partnership.

Unless otherwise agreed, partners who have not wrongfully dissolved a partnership have a right to wind up the partnership. Sec. 178.32, Stats. Winding-up is the process of settling partnership affairs after dissolution. Winding-up is often called liquidation and involves reducing the assets to cash to pay creditors and distribute to partners the value of their respective interests. CRANE AND BROMBERG, *supra*, §§73 and 80(c). Thus, lawful dissolution (or dissolution which is caused in any way except in contravention of the partnership agreement) gives each partner the right to have the business liquidated and his share of the surplus paid *in cash*. *Young v. Cooper*, 30 Tenn. App. 55, 203 S.W.2d 376

(1947); sec. 178.33(1), Stats.; CRANE AND BOMBERG, *supra*, §83A. In-kind distribution is permissible only in very limited circumstances. If the partnership agreement permits in-kind distribution upon dissolution or wind-up or if, at any time prior to wind-up, all partners agree to in-kind distribution, the court may order in-kind distribution. *Logoluso v. Logoluso*, 43 Cal. Rptr. 678 (1965); *Gathright v. Fulton*, 122 Va. 17, 94 S.E. 191, 194 (1917). While at least one court has permitted in-kind distribution, absent an agreement by all partners, *Rinke v. Rinke*, 330 Mich. 615, 48 N.W.2d 201 (1951), the court's holding in that case was limited. In *Rinke*, the court stated:

> The decree of the trial court provided for dividing the assets of the partnerships rather than for the sale thereof and the distribution of cash proceeds. Appellants insist that such method of procedure is erroneous and contemplated by the uniform partnership act. Attention is directed to Section 38 of said act, C.L. 1948, §449.38, Stat. Ann. §20.38. Construing together pertinent provisions of the statute leads to the conclusion that it was not the intention of the legislature in the enactment of the Uniform Partnership Act to impose a mandatory requirement that, under all circumstances, the assets of a dissolved partnership shall be sold and the money received therefor divided among those entitled to it, particularly so, as in the case at bar, where there are no debts to be paid from the proceeds. *The situation disclosed by the record in the present case is somewhat unusual in that no one other than the former partners is interested in the assets of the businesses. In view of this situation and of the nature of the assets,* we think that the trial court was correct in apportioning them to the partners. There is no showing that appellants have been prejudiced thereby. [Emphasis supplied.] 330 Mich. at 628, 48 N.W.2d at 207.

The Michigan court's holding was limited to situations where: (1) there were no creditors to be paid from the proceeds, (2) ordering a sale would be senseless since

no one other than the partners would be interested in the assets of the business, and (3) an in-kind distribution was fair to all partners.

That is not the case here. There was no showing that there were no creditors who would be paid from the proceeds, nor was there a showing that no one other than the partners would be interested in the assets. These factors are important if an in-kind distribution is to be allowed. Section 178.33(1) and §38 of the Uniform Partnership Act are intended to protect creditors as well as partners. In-kind distributions may affect a creditor's right to collect the debt owed since the assets of the partnership, as a whole, may be worth more than the assets once divided up. Thus, the creditor's ability to collect from the individual partners may be jeopardized. Secondly, if others are interested in the assets, a sale provides a more accurate means of establishing the market value of the assets and, thus, better assuring each partner his share in the value of the assets. Where only the partners are interested in the assets, a fair value can be determined without the necessity of a sale. The sale would be merely the partners bidding with each other without any competition. This process could be accomplished through negotiations or at trial with the court as a final arbitrator of the value of the assets. With these policy considerations in mind, we think the Michigan court's holding in *Rinke* was limited to the facts of that case. Those facts not being present in this case, we do not feel an in-kind distribution in this case was proper.

However, even assuming the respondents in this case can show that there are no creditors to be paid, no one other than the partners are interested in the assets, and in-kind distribution would be fair to all partners, we cannot read §38 of the Uniform Partnership Act or sec. 178.33(1), Stats. (the Wisconsin equivalent), as permitting an in-

kind distribution under any circumstances, unless all partners agree. The statute and §38 of the Uniform Partnership Act are quite clear that if a partner may force liquidation, he is entitled to his share of the partnership assets, after creditors are paid *in cash.* To the extent that *Rinke v. Rinke, supra,* creates an exception to cash distribution, we decline to adopt that exception. We, therefore, must hold the trial court erred in ordering an in-kind distribution of the assets of the partnership.

The last question that arises is whether the appellant can force an actual sale of the assets or whether the trial court can determine the fair market value of the assets and order the respondents to pay the appellant in cash an amount equal to his share in the assets.

As discussed above, a sale is the best means of determining the true fair market value of the assets. Generally, liquidation envisions some form of sale. Since the statutes provide that, unless otherwise agreed, any partner who has not wrongfully dissolved the partnership has the right to wind up the partnership and force liquidation, he likewise has a right to force a sale, unless otherwise agreed. *Fortugno v. Hudson Manure Co.,* 51 N.J. Super. 482, 144 A.2d 207, 218–19 (1958) ; *Young v. Cooper,* 30 Tenn. App. 55, 203 S.W.2d 376 (1947). *See also* CRANE AND BROMBERG, *supra,* §83A; 4 Vill. L. Rev. 457 (1959). While judicial sales in some instances may cause economic hardships, these hardships can be avoided by the use of partnership agreements.

*By the Court.*—Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.